Alright, Mr. Smith, how much time would you like to reserve for? We were told we split our time, so I have seven and a half minutes, and I'll reserve three and a half of those. Well, so how's the split? You're going to do seven and a half and give Ms. Farina the remainder subject to rebuttal? Well, if we split it, I get seven and a half, so that has to be her seven and a half. And as for my reserve three and a half, I'd like to speak last after everyone, if possible. Or I could speak directly after my four minutes. Either way. So you want to go four minutes and then Ms. Farina and then rebuttal for the balance? Well, I could go—let me just make it simple. Four and then my three and a half, and I'll then listen to everybody else. Alright. Wait a second. Go ahead. Madam Clerk? Since the parties decided to split their time, I have set two total 7.30 clocks for each of them, so that Mr. Smith can go, he's marked with 3.30, and then Ms. Farina will have her separate 7.30 so they can each have their time allotted for rebuttal to hopefully simplify tracking this. Very impressive. We'll go ahead and try to work that. But that means, Mr. Smith, that you—I'll take you up on your offer. Out of your seven and a half, if you want, you need to reserve after the four minutes to have the three and a half for reply out of your seven and a half. Yeah, and that's best so no one forgets about the three and a half. Alright. And to give Ms. Farina hers. Alright. So, Mr. Smith, if you're going to lead us off, you may proceed. Well, I think that Judge Ofrensky saying that he wouldn't follow ResWIC, the BAP opinion about the state having expired, and that he wouldn't follow Hansborough, the Ninth Circuit, where they should have been warned, is very serious because— But as to Hansborough, you were warned—your client was warned that needed to give up the possession, and that was the order that resulted in the contempt. That order was issued three days after he left, and so— But that's different than the notice issue. That's the substance, and I want you to go into that. But the notice is to comply with the order, you had to give up possession. Well, that's very ambiguous. It could mean that give up possession by vacating. But once he's gone, and he's not the main actor in all of this, he sees an order vacating, give up possession. I've left. I'm never coming back. I've done enough. It doesn't say give the keys. It doesn't say call the trustee. And again, everyone, including himself, has a perception that Farina's the main actor. The court and the trustee always use the term for anything that happened, the debtor and Nicolosi. Yet the only evidence did this, didn't do this. The only joint action in this whole thing is on March 4th, when Mr. Nicolosi said, let everyone else settle possession. I'll stay out. He called the debtor, and they talked to the police, talked to the trustee, talked to the trustee's lawyer. Other than that, zero connection. Just by using the words, the debtor and Nicolosi did something, and I'd like opposing counsel, when he says those words on anything, where's the evidence? I believe counsel is going to point to Ms. Farina's statement that Mr. Nicolosi was living there. That's Ms. Farina's statement, but that's not Mr. Nicolosi's statement. And Judge Afremsky said, well, I don't believe Ms. Farina on that. She said she had children there. I found out from their father they weren't there. She said she couldn't see. I don't believe any of that. So there's no evidence except for Ms. Farina saying that he was there, that he had anything to do with it. He was there. He's the father. Fathers and daughters and adult children have all sorts of relationships with their parents, whether they're boycotting each other or not. Some know a lot what's going on, and some don't, and that's fine. So he was there at her invitation. There's zero evidence apart from that. And there might have been if someone, you know, he was told don't take stuff out. And he said, okay, great. Let's call the debtor, let them all talk. I'll stay out of it. We'll decide. But he's just like if my neighbor filed a Chapter 7 and he had a lot of non-exempt equity in his house and the thing was going on, I go over there, I'm present on property of the estate, but because I'm not trying to get possession, I don't have a claim, I don't have a debt. I've done nothing wrong. I can be there. He wasn't trying to collect a debt. He never filed a claim. He never said he was secured. Ms. Farina said he was secured, but he never said he was secured, never pushed that issue. And so there's no evidence. Maybe there could have been, no one had much time to go into it, but there's no evidence at all. That's kind of the gist of it. There's orders that were made afterwards so that the only thing you could say is, oh, what does this order mean? I'm gone. You're at your three and a half. Okay. Thank you. We got it. Thank you. All right. Ms. Farina. Yes. Hello, Your Honors. May I please the court? My name is Daniela Farina, and I'm the debtor in this case. My case arose in the bankruptcy court from a family civil case. The issue before this court is if I intentionally and willfully violated a specific indefinite court order when the trustee's real estate agent came by my home with no notice on March 4th while I was living there as my primary residence. On March 4th, 2022, the trustee's real estate agent came by my home without any prior notice. At that time, I was not at my home, but I was out running an errand. My elderly parents were visiting with me from the Bay Area, and my elderly parents did not want to go with me to run the errand, so they stayed at home. Shortly after I left, a tall, strange-looking, aggressive man knocked at the front door and asked my father to come in. My father, who was merely a visitor, told the man that he would not allow him to come in until his daughter was back at home. When I returned to the residence, the police were already at the property. That was the extent of my father's participation in the events of March 4th, which led to the trustee to sanction my father. For the next three hours, all of us, including the trustee and the police for the attorney, they actually got their attorney to go over to the court files and review all the court orders in the file. In the end, the police's attorney, after three hours of us all just waiting there, stated that I was in rightful possession of the house based on the appellate court's ruling that overturned the Napa court's order, stating that I was allowed to keep my home until ownership rights of the parties were determined. I relied on the police's attorney's advice since I did not have legal counsel at the time of my own. Three days later, an ex parte hearing was done by the trustee, and on March 7th, 2022, which was three days after that event occurred, the bankruptcy judge issued a writ of possession order. As soon as I was served with that writ of possession order, I immediately turned over the home and moved out of it. As a pro se litigant, it's my understanding that if I was already— Ms. Frena, I thought you said that you agreed that you vacated the premises on the 17th of March, not on the 7th when the order was issued or on the 10th when the order was served or posted on the door. No, I didn't agree that I moved out on the 17th. I had moved out way before then because of the fact that I was talking to legal counsel after that event happened on the 4th, and they already told me that if I'm served, I need to leave. And so that's exactly what I did at that point in time was I left the house. So as a pro se litigant, it's my understanding that I was already in possession of the property on the date of the petition. The mere retention of the property does not violate the automatic stay in the Bankruptcy Code Section 362A3, City of Chicago v. Fulton. Under Fulton, there was no affirmative duty to the debtor to ensure the return of the estate property to the trustee. So the scope of 362C3A is an open question, which has been addressed by two lines of cases. The Ninth Circuit Bankruptcy Appellate Court has described those two lines of authority as the majority view, under which 362C3A terminated the automatic stay only with respect to the debtor and debtor's property, but not with respect to the property of the state after there was a prior bankruptcy that the state terminated. And the minority view under 362C3A terminates the automatic stay in its entirety, that is, with respect to the debtor's property and the property of the state. The Ninth Circuit BAP adopted the majority view and Reswick opinion under Reswick. The automatic stay in the case terminated on February 17th, 2022, as to myself and the property of the state. The Ninth Circuit has not ruled on the split authority. The events set forth in the trustee's motions that they have alleged violated the automatic stay occurred after March 2nd, 2022. Arguably, by that time, the automatic stay had already expired to the property of the state. I had no knowledge that I was in violation of the automatic stay. I was informed that if I was living in the house, that until there was an order put into place, then at that point in time, I would move out. The automatic stay was when the writ of possession was served on me, I had immediately vacated the home. How did you give that? How did you let the trustee know that you vacated? I called them. And at that point that I called them, they were not returning my calls. I left three messages and I was told by my attorney that I need to vacate the home. And they they've never returned a single message. They said that they don't talk to pro se litigants. And it was only after I retained Mr. Mark Voicenot did he again make it clear that I had vacated the home at that point in time. So what your position is that you left on March 7th? I it was I don't know. It was right around that time. It was the day it was issued on March 7th, but I don't know if it was served on me on March 7th. It was served on me within that time frame. I know there were problems with the trustee and the trustee trying to get the sheriff's office to do anything. So they had to go back and forth. And I think on the 18th, the sheriff came in there, openly came in there and saw that I was already vacated or the 17th. They came in there and saw that I was already gone. Thank you. So. Oh, I want to leave the rest of my time for rebuttal. All right. You got about a minute, a minute left. So we'll go first and let Mr. proceed with happily. Thank you. And good morning, your honors. This is Ryan with hands for the trustee, Janina Hoskins. These are the 19th and 20th appeals to arise from the debtors bankruptcy case. And actually, the same fat basic fact pattern was recently before the panel. Last month, judges breaker together with judges Corbett and Ferris affirmed the bankruptcy court's denial of the debtors discharge for her willful and intentional refusal to obey the bankruptcy court's order to vacate the property. Your honors, I want to be mindful of this court's time. I know how much time and effort the court spends in preparation for oral argument, and I trust that the court is well acquainted with the record and the papers in this case. I believe everything that I've heard from Mr. Smith and Miss Farina has been fully addressed in the trustees appeal briefs. So instead of reciting any prepared statement, I would simply ask if your honors have any questions. And if so, I will address them. Otherwise, the trustee will rest on the papers. I guess my question is, you don't expect us to reverse Reswick, do you know? We don't, your honors. So we can reject the argument that you've made in your briefs that this is a violation of the automatic stay because the automatic stay expired under Reswick before the order of possession was issued. And before she was actually in possession because it expired on February 17th. And the first possession that you're alleging is March 4. In response, I would just say that you can uphold the bankruptcy court's order purely on grounds of willful and intentional violation of the court's order to return possession. I also think that let's let's address that. Let's address that. And let's keep each of these individuals separate in terms of the facts that you have adduced. Tell me what evidence you adduced that establishes that after the order of possession was served, Mr. Nicolosi violated the order. He was either in possession. What evidence do you have that he was either in possession or refused to turn over possession to the trustee after the 10th of March? A couple of things, your honor. First, there is the debtor statement. Come on, really? Seriously. You already just asked us to decide that you previously established that she violated and couldn't have a discharge because she lied. And the court relied upon her lies. And now you want us to say that those are truths and that that evidence sustains sanctions against Mr. Nicolosi? That's your argument? No, the court denied her discharge because she willfully and intentionally refused to obey the court's order to vacate the property. But the whole premise of the order for possession is that she was not living there. It was not her homestead. Correct. Because it went in there. There was only boxes. Nobody was living there. It's all detailed, as you said, in multiple others. So if the premise is she was not living there, how is her statement that her father was living there, which doesn't equate with any of the evidence to date, how is that support clear and convincing evidence of a violation of the order for possession? By Mr. Nicolosi. By Mr. Nicolosi. Not Ms. Farina. Mr. Nicolosi. Right. But I would say he was at the property. On March 4th. Also, he failed to take reasonable steps to ensure compliance. What part of the order required him to take reasonable steps? Not the order itself. Not the writ of possession. You really haven't established possession. That's the problem. He was at the property on March 7th. What's at the property? I mean, there's lots of at the property. At the property does not equate to possession, does it? He took acts to exert control over the property and under California law. By requiring his daughter or allowing his daughter to get to the property before admitting the, at that time, ostensible agent of the estate. Yes, and he came prepared with papers from the bankruptcy state showing who he was. He informed him, Mr. Nicolosi. That's before. Counsel, all that occurred on March 4th. You didn't get the order issued until March 7th. Anything he did on the 4th couldn't have been a violation of the order since it hadn't even been issued at that point and it hadn't been served until the 10th. What occurred after the 10th that you can establish was a knowing violation of a specific term of the court order? Other than Ms. Nicolosi's assertion, Ms. Farina's assertion, I'm sorry. Nothing. You have nothing, don't you? I mean, seriously, I'm trying to cut to the chase here. If you have facts that I'm not aware of that the trustee either asserted that another witness testified to, that the sheriff arrested someone, has a report of, tell me. I could find nothing in the record that established that after the 10th, he was even at the property. At most, you have some investigator that said they saw him on the street on the 5th. He was there on the 4th. You got the order on the 7th. It was served on the 10th. I don't see anything. I'm just asking you. You have anything? All the facts that we have were presented in the record before this court and in our papers. All right. Good. Thank you. You've answered the question. Now, with respect to Ms. Farina, is it your position that she vacated no earlier than the 17th? And that was clearly after the order was issued? Yes. And even after that order was entered, she filed papers saying that she was still at the property and controlled the property. Yes. Okay. And as to the notice issue, I want to make sure I understand. You believe that Hansborough really is not an impediment because the order that had to be given clear notice of was possession? Yes. And also, Hansborough, I don't believe is controlling the controlling law, I believe, is that no specific warning needs to be given. And the bankruptcy court found that even if a warning was required, that adequate warning was provided. But what is the specific adequate warning that has to be given and that was adequately provided? That she had to turn over possession of the property and could not exert control over a state property. That would subject her to potential sanctions. Right. But I believe the argument by Mr. Smith is that you had to say we were going to seek monetary damages, including attorney's fees. Right. And I believe that that specific language came from the notice of the bankruptcy case. A violation of the automatic stay would result in sanctions. So if I got your argument, you're saying, look, in the order of possession, it said that if you violate the automatic stay by continuing to exert control over or maintain possession of the property, you may be subject to sanctions under 362. And then that forms a basis for her violation after the order is issued by continuing to possess the property, not because it's a stay violation necessarily, but because it actually violates the order of possession itself. Yes, Your Honor. And just to be very plain about it, she knew that she wasn't supposed to be there and there would be consequences for continuing to exert possession and control over the property. I got it. Anything else? I just want to talk about Reswick really quickly. We do believe that that is limited to the chapter 13 context for the reasons that we've set forth in our brief. All right. Thank you. Anything further? Nothing further. Thank you very much, counsel. Thank you, Your Honors. All right. We'll begin with replies from Mr. Smith. Mr. Smith, you have about three and a half minutes left. Yes. Something about those two cases and Judge Ofrensky, we have the three back judges have one opinion, and we have Judge Ofrensky as another. And we have the Ninth Circuit judges have an opinion on the warning, and Judge Ofrensky has another. So these are smart bank judges, and there's a bit of a dispute. That alone shows, I think, that the order, it's just not clear enough that you can be found in contempt of order. It was clear that you have to give possession back immediately, right? I mean, that was clear. Yes, it is clear you have to give possession back. And so the man who came by, the realtor, he came by two days before he was appointed.  And so the way he was greeted would be like I would greet someone at the neighbor's house. Hey, I'm the landlord. I want to see the air conditioning. I'd say, hang on a second. I'm a visitor. Can I call the homeowner over? Nothing that Mr. Nicolosi did or said or at all was improper. In fact, he would have been exerting possession if he made a decision that this stranger at the door could come in. You know, these days with stuff that happens on the Internet, people who tell you something, you know, it's very reasonable. Look, I stayed out of it. Mr. Withensman or people, everyone talked about him. He didn't talk about it. He didn't get in about talking about possession. He didn't say a word. So with that, I will rest. Thank you very much. Ms. Farina, you have replied for about a minute now. Yes, Your Honors. I want to address the point that Mr. Withens keeps stating that I continue to maintain control over the property after the 10th of March. That was absolutely untrue. And he has not submitted one piece of evidence that shows that it is true. In addition, the only reason that he says it's the 17th is that's when the police went into the house and saw that I was gone. But I was gone way before then, and I did not maintain possession of the house after I found out that there was a writ of possession that was filed and that I had to obey with it. I complied immediately. Thank you very much. Thank you. All right. Any questions? No. Then that concludes our oral argument. Thank you very much. We'll take the matter under submission and attempt to get the decision out as promptly as possible. Thank you. Thank you. Thank you, Your Honors. Madam Clerk, I believe that concludes the calendar, and we will be adjourned. Wonderful. Court is adjourned.
judges: SPRAKER, GAN, and MEIER